Filed 6/8/26  In re R.A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.A. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPTARTMENT OF HUMAN SERVICES,  Plaintiff and Respondent,  v.  J.H.,  Defendant and Appellant. | F090903  (Super. Ct. Nos. JD142617-00, JD142700-00 and JD142701-00)  **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kendra L. Graham, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Levy, Acting P. J., Peña, J. and Snauffer, J.

Appellant J.H. (mother) is the mother of R.A., G.P., and J.P. (collectively "the children"), who are the subjects of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in her parental rights being terminated. Mother contends the juvenile court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et. seq.) The department concedes that it failed to conduct an adequate inquiry into the potential Indian ancestry of the children, and it does not oppose remand for the limited purpose of conducting further ICWA inquiry.[2] We agree with the parties and conditionally reverse the juvenile court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In October 2021, R.A. was taken into protective custody due to ongoing domestic violence between mother and R.A.'s father, Raymond A. The department filed a juvenile dependency petition alleging R.A. was described by section 300, subdivision (b)(1). The allegations involved mother's ongoing substance abuse and domestic violence relationship with Raymond. Mother and Raymond denied having any Indian ancestry during the department's initial investigation.

At the initial detention hearing for R.A., held on October 26, 2021, mother was present and Raymond was not. Mother filed a "Parental Notification of Indian Status" form (ICWA-020), which indicated she may have Chumash ancestry through her

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

grandmother. The juvenile court inquired of mother regarding her potential Chumash ancestry, and she identified her grandmother, Linda M., as the only living family member with information on their family's ancestry.

Linda was present in the courtroom, and the juvenile court obtained a significant amount of information regarding the maternal family's ancestry. Linda's grandmother, the children's maternal great-great-great-grandmother, had an enrollment number with the Chumash tribe, but Linda's mother passed away before they were able to obtain the number. Linda stated their family's ancestry was from the "Selenian Indian," which were described as part of the Chumash tribe. The juvenile court reserved making an ICWA finding as to R.A. to allow the department to determine tribal eligibility and the federal recognition status of the Chumash tribe. The detention hearing was continued to the following date.

Mother and Raymond were present for the continued detention hearing. Raymond denied having any Indian ancestry when questioned by the juvenile court. R.A. was detained from mother and Raymond's custody, and a combined jurisdiction and disposition hearing was set for November 18, 2021.

On November 2, 2021, G.P. and J.P. were taken into protective custody pursuant to a warrant. The maternal grandparents lived with G.P. and J.P. in the same apartment complex as mother. G.P. and J.P. were allowed to be with mother despite the ongoing domestic violence. Dependency petitions were filed alleging G.P. and J.P. were described by section 300, subdivision (b)(1). Daniel P. was identified as the father of G.P. and J.P. At a continued detention hearing held on November 9, 2021, G.P. and J.P. were detained from mother's custody, and a combined jurisdiction and disposition hearing was set for November 18, 2021. Mother and the maternal great-grandmother reiterated information regarding their family's Indian ancestry through the "Northern Chumash" tribe.

The department's jurisdiction reports recommended that the allegations in the petitions be found true. The initial jurisdiction and disposition hearing was continued as Daniel made his first appearance in the proceedings to request custody of G.P. and J.P.

On November 23, 2021, the department sent a "Notice of Child Custody Proceeding for Indian Child" form (ICWA-030) to the Tejon Indian Tribe and Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation. The biological family information included the full names and birthdates for mother, Raymond, Daniel, maternal grandmother, maternal great-grandmother, two maternal great-great-grandmothers, and maternal great-great-great-grandmother. Family information was not provided for any of the children's paternal family members. Responses from the Tejon Indian Tribe and Santa Ynez Band of Chumash Indians indicated that the children and their parents were not members of their tribe.

At the continued jurisdiction and disposition hearing held on February 8, 2022, mother and Daniel were both present. Daniel reported Cherokee and Choctaw ancestry through his maternal great-grandmother. Daniel's maternal grandmother, Barbara T., was identified as the only living family member with potential knowledge of the family's Indian ancestry. There was no contact information available for Barbara, but Daniel agreed to obtain her phone number by going to her house. Daniel expressed a desire for G.P. and J.P. to be placed in his care. The juvenile court reserved making an ICWA finding for G.P. and J.P., but ICWA was found not applicable as to R.A.

On March 2, 2022, the juvenile court sustained the allegations in the petition, and the disposition hearing was continued to April 5, 2022. The disposition reports recommended that R.A. remain in out-of-home care with family reunification services provided to mother and Raymond. J.P. and G.P. were to be placed with Daniel, and family reunification services were recommended for mother as to J.P. and G.P. The department also recommended that J.P. and G.P.'s dependency proceedings be transferred to San Luis Obispo County based upon Daniel's current residence.

4.

The report detailed the department's family finding efforts. In October 2021, November 2021, and December 2021, a family finding social worker contacted several maternal and paternal family members to discuss placement options. The maternal grandmother, maternal grandfather, maternal great-grandmother, and G.P. and J.P.'s paternal aunt, C.R., expressed interest in applying for placement.

On March 22, 2022, a department paralegal made further inquiry of Daniel regarding his claim of Cherokee and Choctaw ancestry. The paralegal reviewed the child welfare case management system and family tree created by the family finding social worker, which included an address and date of birth for the paternal great-grandmother, Barbara T. Daniel had not been in contact with Barbara, but he agreed to look up her contact information. The next day, an ICWA-030 notice form was sent to the federally recognized Cherokee and Choctaw tribes for G.P. and J.P. None of the responses from the tribes indicated G.P. or J.P. were members or eligible for membership in their respective tribe.

A contested disposition hearing was eventually held on July 29, 2022. The children were removed from the custody of their parents and family reunification services were ordered for mother, Raymond, and Daniel. The juvenile court found there was no reason to believe the children were Indian children, and ICWA was found to be inapplicable to the children. A combined six-month and 12-month review hearing was set for December 21, 2022.

During the family reunification period, mother, Daniel, and Raymond failed to complete the components of their case plan. Family reunification services were terminated for the parents at the combined six-month and 12-month review hearing held on February 6, 2023. A section 366.26 hearing was not set because the children were not proper subjects for adoption and there was no one willing to accept guardianship. The court ordered the children to remain in foster care with a permanent plan of placement

with a fit and willing relative.  A review hearing pursuant to section 366.3 was set for August 3, 2023.

At a subsequent postpermanency review hearing held on August 1, 2025, the juvenile court set a section 366.26 hearing.  The department's section 366.26 reports, dated November 20, 2025, recommended that the juvenile court terminate the parental rights of mother, Daniel, and Raymond and order a permanent plan of adoption for the children.

On November 25, 2025, a department paralegal filed a declaration providing details of the department's ongoing inquiry into the children's potential Indian ancestry. The paternal great-uncle of R.A. reported Yaqui ancestry through R.A.'s paternal great-grandfather.  An ICWA-030 notice form was sent to the Pascua Yaqui tribe with full names and dates of birth for father, paternal grandparents, and the paternal great-grandfather.  The notice also included current addresses for the paternal grandfather and a paternal aunt, Re.A.  The Pascua Yaqui tribe responded that R.A. was neither a member nor eligible for membership in their tribe.

An updated ICWA-030 notice form was also sent to the Salinan Tribe of San Luis Obispo and Monterey Counties on behalf of the children.  The enrollment secretary for the Salinan Tribe acknowledged that the maternal great-great-great grandmother was listed in the tribe's records, but the tribe was not currently adding new members.  The department also determined that the Salinan Tribe was not a federally recognized tribe.

At the section 366.26 hearing, the juvenile court terminated parental rights and selected a plan of adoption for the children.  The court also found there was no reason to know or believe the children were Indian children.

## DISCUSSION

Mother contends the juvenile court and department failed to adequately discharge their duty of inquiry regarding the parent's claims of possible Indian ancestry.  The department concedes this point, and we accept their concession.

### A. *Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

Under ICWA's state analogue, the California Indian Child Welfare Act (§ 224 et seq.) (Cal-ICWA), "courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child … is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)[4] The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (b)(1).) Once a child is received into temporary custody, the initial duty to inquire

---

[4] All further references to rules are to the California Rules of Court.

includes asking the child, parents, legal guardian, Indian custodian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b)(2), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether they "know or have reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or agency "has information suggesting that either the parent of the child or the child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe." (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the agency "shall make further inquiry regarding the possible Indian status of the child and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (*Id.*, subd. (e)(2)(A)–(C).)

The final duty component arises when the juvenile court or agency has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The

child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker to conduct further inquiry. (§ 224.2, subd. (i)(2).)

## B.    *Standard of Review*

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child under a substantial evidence standard, and the court's finding that the department has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) An inadequate inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the child welfare department to conduct an adequate inquiry, supported by record documentation. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.)

## C.    *Analysis*

Pursuant to its duty under section 224.2, the department asked mother, Raymond, and Daniel whether they had any Indian heritage. Both mother and Daniel claimed Indian ancestry. The children's maternal great-grandmother provided additional information on the maternal family's ancestry from the nonfederally recognized Salinan Tribe. The maternal great-great-great grandmother was listed in the tribe's records, but the tribe was not currently enrolling new members. Accordingly, the inquiry of maternal family members was proper and adequate.

9.

As to the children's paternal ancestry, the department was unable to obtain a phone number for Daniel's grandmother, Barbara, who was identified as an individual with knowledge of G.P. and J.P.'s paternal ancestry. A paternal aunt, C.R., expressed interest in applying for placement of G.P. and J.P, but the record does not reflect that an inquiry was made regarding their paternal family's ancestry. Furthermore, the department sent notice to the Pascua Yaqui tribe based on R.A.'s paternal great-uncle reporting Yaqui ancestry. The notice included the full name and current address for R.A.'s paternal grandfather, but the department's reports and ICWA declarations do not include an attempted inquiry of any other paternal relatives for R.A.

In sum, there were at least two additional paternal family members that could have provided meaningful information on the children's ancestry. Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) Given the department's concession, we accept that R.A.'s paternal grandfather and G.P. and J.P.'s paternal aunt were readily available for an inquiry. Under the circumstances, we conclude the agency did not fulfill its statutory duty of inquiry. (§ 224.2, subd. (b).)

As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. Thus, we conditionally reverse and remand "with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1136.)

## DISPOSITION

The juvenile court's orders terminating parental rights are conditionally reversed. The matter is remanded to the court for the limited purpose of ensuring compliance with

10.

the inquiry and documentation provisions set forth in section 224.2 and rule 5.481. If, after determining that a proper, adequate, and duly diligent inquiry was made, the court concludes that ICWA does not apply, then the court shall reinstate its orders terminating parental rights. If, instead, the court concludes that ICWA applies, then the court shall proceed in conformity with ICWA and Cal-ICWA.